IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

MARK A. BAINE,                          )
                                        )
        Petitioner,                     )
                                        )
v.                                      )        CIVIL ACTION NO. 10-00334-CG-N
                                        )
BILLY MITCHUM,                          )
                                        )
        Respondent.                     )

REPORT AND RECOMMENDATION

This action is before the court on respondent's answer and motion to dismiss

(doc. 9 ) filed December 14, 2010, as supplemented (doc. 22) on February 1, 2011,

wherein respondent sets forth, inter alia, that petitioner's habeas corpus petition, filed on

June 28, 2010 (doc. 1), is due to be denied as procedurally barred and without merit. This

action is also before the Court on petitioner's motion (doc. 29) to expedite an evidentiary

hearing in this case and motion (doc. 31) for limited discovery, namely certain documents

pertaining to Daryl Blount, a prosecution witness[1]. The matters have been referred to the

undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28

U.S.C. § 636(b)(1)(B). Upon consideration of the petitioner's § 2254 petition and

pending motions (docs. 29, 31), respondent's opposition thereto (doc. 9), as

supplemented (doc. 22), petitioner's reply (doc. 20), and all other pertinent portions of

---

[1] Baine seeks "arrest and conviction records [relating to Daryl Blount], the final results in adjudication of his pending case as of May 1, 2006, any and all consideration given him or agreements made with him in exchange for his favorable testimony." (Doc. 31 at 2).

the record, it is the recommendation of the undersigned that the § 2254 petition be

**DENIED**.

## I.     PROCEDURAL HISTORY

On May 3, 2006, Mark A. Baine ("Baine") was found guilty of murder[2] in the

Circuit Court of Mobile County, Alabama.  (Doc. 9-6 at 100-101).  On June 16, 2006,

Baine was sentenced to life in prison.  (Doc. 9-13 at 6).  James D. Brandyburg

represented Baine at trial and Judge Herman Thomas presided.

---

[2] Baine was convicted of the murder of John Brunson on the night of February 20-21, 2004. According to the State's pathologist, Brunson suffered from injuries before his death to the head, including the temples, nose and upper lip consistent with a fist fight, but the cause of his death was severe injuries to his torso consistent with being "kicked and stomped on."  (Doc. 9-5 at 32-37, 39-42, 45).  Two individuals who found Brunson's body, Alvin Roberts and Darryl Blount, testified that they had known Baine and Brunson for several months and had seen them occasionally sitting in the park drinking wine or beer together.  (Doc. 9-2 at 83, 90; Doc. 9-3 at 71-72). Roberts testified that he had seen Baine and Brunson together at approximately 3:00 p.m. on February 20, 2004. (Doc. 9-2 at 53).  Blount testified that he saw someone bending over the body who ran away when Blount and his companion approached the body.  (Doc. 9-3 at 4-5).  Blount described him as wearing "some blue jean clothing, hair flapping on the sides, like a bald-shinny top and kind of short."  (*Id*. at 8).  Ireola Stevenson testified that Baine came into the Circle K Store where she worked late the night of February 20-21, 2004, with his nose bleeding and "fingerprints of blood" on his white t-shirt.  (Doc. 9-3 at 33-34).  She further testified that, other than the blood under his nose, the rest of Baine's face as well as his hands were clean.  (*Id*. at 34).  Baine became a suspect in Brunson's murder and was subsequently taken into custody at an apartment he shared with other homeless individuals.  (*Id*. at 45-47).  At the time Baine was taken into custody, there was blood on his clothes and "a substantial amount of blood on his shoes right there in the vicinity."  (*Id*. at 49).  DNA evidence showed that both Baine's and the victim's clothing had blood stains that were a mixture of each other's blood, including Baine's shoes.  (Doc. 9-4 at 55-76).  No other person's blood was found on any of the items tested, either on the victim or on Baine, other than the blood of the victim and Baine.  (Doc. 9-5 at 22).  Baine testified that he was with Brunson in Booth Park on February 20, 2004, sharing vodka and wine.  (Doc. 9-5 at 93, 95-101).  Baine testified that he left at about 10:00 p.m. to see a girl but did not find her. (*Id*. at 101-102).  He testified that when he returned to the park, he saw "a white guy on top of [Brunson] and there was a black guy standing over the both of them. . . [and the white guy ] was beating him."  (Doc. 9-6 at 2).  Baine testified that he ran to Brunson's aid, "hit the guy that was on top . . . and got him off, knocked him off, basically, and we started fighting," (*Id*. at 3).  Baine testified that the "black guy . . . hit me on the back of the head, side of the head or something [and that the fight lasted] less than a minute."  (*Id*.).  When these alleged assailant ran away, Baine said that he offered to take Brunson home or call for help but Brunson "said he didn't need my God damn help" so Baine left and did not tell anyone about what happened until he was arrested."  (*Id*. at 4-5).

Baine did not file a motion for a new trial but did file a notice of appeal on June 20, 2006. Baine was represented on appeal by Robert Ratliff, court appointed counsel. On appeal, Baine raised one issue, namely that the evidence was insufficient to prove that he committed the offense of murder. Specifically, Baine argued:

> The Appellant, Mark Baine, would submit that the evidence presented at trial provided only circumstantial evidence of his guilt. The testimony and physical evidence did not provide the jury with any basis on which to infer or find that Baine acted with intent to cause the death of Brunson. Further, there was no testimony or physical evidence that supported a finding beyond a reasonable doubt, that Baine used an object of any type, to cause the death of Brunson.

(Doc. 9-7 at 6).

The Alabama Court of Criminal Appeals affirmed Baine's conviction on March 16, 2007, in a memorandum decision, concluding that the evidence, though circumstantial, was sufficient to prove that Baine intended to cause the victim's death.[3] (Doc. 9-8). The Court also concluded that the evidence was sufficient to establish that "Baine's feet and shoes could be properly classified as dangerous or deadly objects because they were used to kick and stomp Brunson in a manner that was clearly capable of causing his death." (Doc. 9-8 at 7). On March 23, 2007, Baine filed an application for rehearing, which was denied on April 6, 2007. (Doc. 9-9 at 21). On April 16, 2007,

---

[3] The Alabama Court of Criminal Appeals specifically rejected Baine's contention that the evidence of intent was insufficient because he claimed to have been "clearly intoxicated" at the time of the offense. (Doc. 9-8 at 5). The Court concluded that Baine's testimony "was insufficient to show that Baine was too intoxicated to form the requisite intent." (*Id*.). In addition, the Court cited to not only the testimony of the medical examiner concerning the fact that "chronic alcoholics can tolerate levels of alcohol that would be deadly in ordinary people," but to the fact that Baine never claimed "that he suffered any physical symptoms of intoxication at the time of the offense." (*Id*.).

Baine filed a petition for writ of certiorari in the Supreme Court of Alabama reasserting his contentions he made on appeal, namely that the evidence was insufficient to establish intent and his hands and feet could not be considered deadly weapons as a matter of law. (*Id*. at 1-2, 5).

On August 3, 2007, the Supreme Court of Alabama denied Baine's petition for writ of certiorari. (Doc. 9-10). Baine filed a *pro se* petition for rehearing on August 20, 2007 (doc. 9-11), which was stricken by the Court on August 22, 2007, because no application for rehearing is permitted when a petition for writ of certiorari is denied (doc. 9-12).

On July 28, 2008, Baine executed a *pro se* petition under Rule 32 of the Alabama Rules of Criminal Procedure challenging his murder conviction. (Doc. 9-13 at 14-47). This was filed in the Circuit Court of Mobile County, Alabama, on August 4, 2008. (*Id*. at 8). In his petition, Baine selected a number of the specific constitutional claims printed on the form he utilized, namely:

- (3)   Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

- (4)   Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

- (5)   Conviction obtained by a violation of the privilege against self-incrimination.

- (6)   Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

● ● ●

- (8) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected or impaneled.

- (9) Denial of effective assistance of counsel.

(*Id*. at 18-19).[4] Baine also selected the following preprinted claims:

- B. The court was without jurisdiction to render judgment or to impose the sentence.

- C. The sentence imposed exceeds the maximum authorized by law, or is otherwise not authorized by law.

● ● ●

- E. Newly discovered material facts exist which require that the conviction or sentence be vacated by the court.

(*Id*. at 19). Under the section identified as "Arguments," Baine attacked almost every aspect of his trial and counsel's performance in somewhere between 85 and 97 paragraphs which failed to follow any particular order. (Doc. 9-13 at 22-26, 27-32, 33-40, 45-46, 63-65).[5] The record also indicates that Baine was granted leave to amend his petition. *See*, Doc. 9-14 at 92, 95, and 98.

The State responded to Baine's petition on November 20, 2008, and moved to dismiss on the grounds, in sum, that the claims were not pleaded with specificity, failed to state a claim and raised no material issue entitling Baine to relief under Rule 32. (Doc.

---

[4] According to the preprinted form utilized by Baine, these constitutional violations require "a new trial, a new sentence proceeding, or other relief." (Doc. 9-13 at 18).

[5] As the Respondent points out, when the appellate record was compiled, the pages of Baine's petition were not placed in proper sequential order but, instead, appear in somewhat random fashion. (Doc. 9 at n.2). The undersigned has referenced the petition here in blocks representing sequential, though out of order, pages.

9-14 at 11-26). On June 5, 2009, Baine responded to the State's response but the bad quality of the copy of this document in the appellate record makes it impossible to read. (Doc. 9-14 at 85-87; Doc. 9-15 at 1-22). A number of exhibits were attached to Baine's petition. (Doc. 9-15 at 23-60; Doc. 9-16 at 1-35).

On June 9, 2009, the Circuit Court of Mobile County dismissed Baine's petition, concluding it was without merit. (Doc. 9-16 at 36-49). The Circuit Court summarized the "numerous grounds for post-petition relief in . . . Baine's various Rule 32 filings" into the following grounds (doc. 9-16 at 37):

(1) Violation of Baine's right to remain silent.

(2) Insufficient evidence to sustain Baine's conviction.

(3) The destruction, concealment or non-production of exculpatory evidence and/or witnesses.

(4) The trial judge was unfit and biased against Baine.

(5) Deprivation of right to counsel.

(6) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(7) Defective indictment – allegedly not signed by Grand Jury foreperson.

(8) Denial of right to a speedy trial.

(9) Ineffective assistance of trial counsel and appellate counsel.

(*Id*. at 37). The Circuit Court held that, "[t]o the extent Baine seeks to assert a ground for relief that does not fall within one of the above nine grounds, the Court finds that any such grounds lack the required specificity under Rule 32.6(b) and are summarily dismissed pursuant to Rule 32.7(d). (*Id*.) The Court further held:

As an initial matter, almost all of Baine's claims for relief are precluded by Rules 32.2(a)(3), 32.2(a)(4) and 32.2(a)(5). *See Shoulders v. State*, 703 So.2d 1015, 1018 (Ala. Crim.App. 1997). Rule 32.2(a)(4) precludes a ground for relief "[w]hich was raised or addressed on appeal. . .". Rules 32.2(a)(3) & (5) preclude a ground "[w]hich *could have been* but was not raised at trial [or] on appeal, unless the ground for relief [is jurisdictional]." Ala.R.Crim.P. Rule 32.2(a)(3) & (5)(emphasis added). None of the grounds raised by Baine are jurisdictional. Nor do the grounds asserted by Baine arise out of any newly discovered evidence, and it is apparent that most of these matters could have been raised at trial or on appeal.

(*Id*. at 37-38). The Circuit Court further held that, in any event, "all of Baine's claims for post-conviction relief are without merit." (*Id*.). The Court then specifically addressed each of the nine grounds it had compiled as constituting Blaine's grounds for post-petition relief. (*Id*. at 38-49).

Baine appealed the denial of his Rule 32 petition, raising the following claims:[6]

(1)     Baine was entitled to a jury charge on a lesser-included offense, namely manslaughter, because there was evidence that he was intoxicated at the time of the offense. (Doc. 9-19 at 6-7).

(2)     The State failed to prove the existence of the "unknown object" used to commit the murder as charged in the indictment. (*Id*. at 7-9).

(3)     The prosecutor made a comment on Baine's post-arrest silence. (*Id*. at 9-10).

(4)     Appellate counsel was ineffective for failure to raise a claim that trial counsel was ineffective because he allowed evidence of "defendant's silence" to be

---

[6] As to virtually each claim, Baine adds the claim of ineffective assistance of appellate counsel for failing to assert on direct appeal that his trial counsel was ineffective because he either failed to challenge the introduction of evidence, prevent it's admission or obtain some other relief.

presented to the jury without requesting a curative instruction to the jury to disregard the comment on Baine's post-arrest silence. (*Id.* at 11).

(5)    The State's evidence was insufficient to meet its burden of proving all the elements of the charged offense.  (*Id.* at 11-12).

(6)    The State destroyed evidence that would show that Baine was "aggressively attacked" the night of the crime as he testified to at trial.  (*Id.* at 12-13).

(7)    Numerous items of untested evidence were admitted into evidence and, because they were untested, denied Baine the right to confrontation and due process. (*Id.* at 13-14).

(8)    The State failed to disclose to the defense that it intended to call Daryl Blount as a witness at trial and impeachment evidence they had against Blount.[7] (*Id.* at 14-22).

(9)    The trial Judge, former Circuit Judge Herman Thomas, should have been disqualified from presiding at Baine's trial because he was "mentally unstable," "unfit to preside over his or any other trial," and "his impartiality might reasonably be questioned." (*Id.* at 22-24).

(10)    Appellate counsel was ineffective for not raising the claim that his arrest and the seizure of evidence admitted at trial was the result of an unlawful search and seizure.  (*Id.* at 24-25).

---

[7] Baine contends that Blount testified that he made "a report to Police the night of the crime" but that the State did not disclose such a report.  (Doc. 9-19 at 14-22). Thus, Baine argues that, if there is no report, "then the State relied on perjured testimony to obtain a conviction."  (*Id.*).

(11)    Appellate counsel was ineffective for not raising the claim that trial counsel was ineffective because he failed to request funds to hire an independent forensic expert to help investigate and challenge the State's physical evidence.  (*Id*. at 26-27).

(12)    Trial counsel was ineffective because he allowed the State to mislead the jury, appellate counsel, and the Court of Criminal Appeals to believe that swabs containing DNA evidence that were admitted into evidence were taken from the victim's hands rather than Baine's hands.  (*Id*. at 27-28).

(13)    Appellate counsel was ineffective for not raising a claim that trial counsel was ineffective because he did not object to the prosecutor's statements inferring that Baine was a liar.  (*Id*. at 28-29).

The Alabama Court of Criminal Appeals affirmed the denial of Baine's Rule 32 petition by the Mobile County Circuit Court on February 26, 2010, in a memorandum opinion declaring:

> Baine's innumerable claims and assertions were properly dismissed because he failed to meet his burden of pleading under Rules 32.3 and 32.6(b), Ala. R. Crim. P.  McNabb v. State, 991 So.2d 313, 333 (Ala. Crim. App. 2007)(reaffirming that this court "may affirm the denial of a Rule 32 petition if the denial is correct for any reason.").  Although Baines [sic] appears to have alleged numerous claims, he alleged little to no factual basis for those claims.  Because Baine's claims lacked any factual specificity, much less the specificity required under Rules 32.3 and 32.6(b), Ala. R. Crim. P., the circuit court did not abuse its discretion by summarily dismissing his petition.  Ala. R. Crim. P. 32.7(d).

(Doc. 9-20 at 3-4).  In addition, the Alabama Court of Criminal Appeals held that "Baines [sic] failed to meet his burden to provide a record that supports his assertions on appeal. (*Id*. at 4, n. 2, *citing* Saunders v. State, 10 So.2d 53, 77 (Ala. Crim. App. 2007).

On June 23, 2010, Baine filed the present petition pursuant to 28 U.S.C. § 2254, challenging his 2006 conviction for murder. This is the first such petition filed by Baine challenging the 2006 murder conviction. Baine raises the following claims in his habeas petition:

(1)    Prosecutor violated the 5th and 14th Amendments by commenting at trial on Baine's post-arrest silence. (Doc. 1 at 8).

(2)    Trial court violated Baine's due process right when it did not give jury instruction on voluntary intoxication and a lesser-included offense. (*Id*. at 9-10).

(3)    Baine was denied a fit and impartial judge. (*Id*. at 12).

(4)    State failed to disclose all the statements made by its witness, Daryl Blount, on the night of the crime, including evidence that would have impeached his testimony. (*Id*. at 14).

(5)    If the State contends that "no 'eyewitness' Report to Police" by Daryl Blount exists, then Blount's testimony that he gave such a report to the police was perjured testimony used to obtain Baine's conviction. (*Id*. at 15-16).

(6)    Numerous exhibits were admitted into evidence without scientific testing and should have been excluded. (*Id*. at 16).

(7)    Baines's right to a fair trial was violated when trial counsel allowed the State to mislead the jury, and appellate counsel to mislead the Alabama Court of Criminal Appeals, into believing that swabs of DNA were taken from the victim when they were in fact taken from Baine. (*Id*.).

(8)     Trial counsel was ineffective because he failed to request jury instruction on a lesser included offense; to object to the undisclosed statement made by the State's witness, Daryl Blount; to object to the prosecutor's commenting at trial about Baine's post arrest silence; to object to the admission of "untested" evidence; to appeal adverse ruling on motion to suppress; and to pursue Baine's motion for impeaching information. (*Id*. at 17-20).

(9)     State's evidence was insufficient to warrant a conviction for murder. (*Id*. at 21).

(10)     Potentially exculpatory evidence was suppressed or destroyed. (*Id*.)

(11)     Appellate counsel was ineffective for failing to address on appeal trial counsel's failure to appeal adverse ruling on motion to suppress evidence obtained by unconstitutional seizure. (*Id*. at 22).

II.     ANALYSIS.

A.     Motions for expedited hearing and limited discovery.

Baine's motion for expedited hearing (doc. 29) is moot in view of this present opinion. Consequently, it is **ORDERED** that Baine's motion (doc. 29) is hereby **DENIED** as **MOOT**.

In his motion for limited discovery (doc. 31), Baine seeks certain documents pertaining to Daryl Blount, a prosecution witness, namely "arrest and conviction records [relating to Daryl Blount], the final results in adjudication of his pending case as of May 1, 2006, any and all consideration given him or agreements made with him in exchange

for his favorable testimony." (Doc. 31 at 2). Baine relies on Rule 6(a) and (b) of the Rules Governing § 2254 Cases (*Id*.). Rule 6(a) of the Rules Governing § 2254 Cases states:

> A party shall be entitled to invoke processes of discovery available under Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Rule 6(b) states that:

> A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

However, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). "In interpreting the good cause portions of this rule, the Supreme Court noted that 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry'." Williams v. Humphrey, 2013 WL 3877750, *4 (S.D. Ga. July 26, 2013), *quoting* Isaacs v. Head, 300 F.3d 1232, 1248 (11th Cir. 2002)(*quoting* Bracy, 520 U.S. at 908–09). "A petitioner must set forth specific allegations of fact, as opposed to conclusory assertions, because Rule 6 does not authorize 'fishing expeditions'." Williams, 2013 WL 3877750 at *4, *citing* Ward v. Whitley, 21 F.3d 1355, 1367 (5th Cir. 1994).

Baine has failed to make the requisite showing of "good cause" to obtain the discovery he seeks. He asserts only that he "expects to find impeaching information from

this requested limited discovery." (Doc. 31 at 2). Baine merely speculates that, "[s]ince

Blount was an inmate at Mobile Metro Jail at the time he testified it stands to reason that

he testified for the State was to [sic] obtain favorable treatment in his pending case or he

could in fact have worked previously for the government." (*Id*. at 3). For the reasons

stated *infra*, Baine has proffered no facts to support a claim under either Brady v.

Maryland, 737 U.S. 83 (1963), or Giglio v. United States, 405 U.S. 150 (1972).

Consequently, Baine's motion for limited discovery is hereby **DENIED**.

      B.    Statute of Limitations.

      The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) provides,

in pertinent part:

> A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court. The
> limitation period shall run from the latest of the date on which the judgment
> became final by the conclusion of direct review or the expiration of the time for
> seeking such review.

28 U.S.C. § 2244(d)(1). The time during which a properly filed application for State

post-conviction review or other collateral review of the conviction is pending "shall not

be counted toward any period of limitation under this subsection." 28 U.S.C.

§ 2244(d)(2). In addition, if the petitioner, on direct appeal, files a petition for a writ of

certiorari in the Alabama Supreme Court, he is entitled to an additional tolling of 90 days,

the time to file a writ of certiorari with the United States Supreme Court. *See* Coleman

v. Davenport, 2009 WL 3857437, 4 (M.D. Ala. Nov. 17, 2009)("[A] petition for writ of

certiorari to the United States Supreme Court may only be filed to review a judgment or

order entered by a state court of last resort and must be filed within ninety days of the

action undertaken by the aforementioned state court."); <u>Dobbins v. McNeil</u>, 2009 WL 1635210, *1 (N.D. Fla. June 10, 2009)("Petitioner's conviction became final [] when the time to file a petition for writ of certiorari expired); <u>Wyche v. Frazier</u>, 2009 WL 111656, *2 (N.D. Ga. Jan. 14, 2009)(Petitioner's convictions became final [] when his time to seek a writ of certiorari in the United States Supreme Court expired, 90 days after the Georgia Supreme Court [] denied his petition for certiorari")(*citing*, Sup.Ct. R. 13, 30; <u>Stafford v. Thompson</u>, 328 F.3d 1302, 1303 (11th Cir. 2003).

Baine's direct appeal was final on August 3, 2007. Baine was entitled to an additional 90 days tolling before the federal statute of limitations began to run because he filed a petition for writ of certiorari in the Alabama Supreme Court. Consequently, the federal statute of limitations began to run on November 2, 2007, but was then tolled on July 28, 2008, when Baine executed *pro se* a Rule 32 petition challenging his conviction. The certificate of judgment in the post-conviction proceeding was issued on June 18, 2010, at which time only 269 days of the federal statute of limitations period had expired. A lapse of only 274 days of the limitations period occurred before Baine filed his present habeas petition on June 23, 2010. Baine's petition was, therefore, timely filed under 28 U.S.C. § 2244(d).

 C.  <u>Exhaustion[8] and Procedural Default</u>.

---

[8] On April 26, 2010, Baine filed a § 2254 petition in <u>Baine v. Mitchem</u>, Civil Action No. 1:10-cv-00189-CG-N, which was dismissed without prejudice (doc. 9) for failure to exhaust his post-judgment collateral attack under state law.

A state prisoner must exhaust his state remedies prior to challenging his conviction in a habeas petition filed in federal court. See 28 U.S.C. §§ 2254(b)(1) and (c); Woodford v. Ngo, 548 U.S. 81, 92 (2006). The Eleventh Circuit has succinctly stated the rule as follows:

> Generally, a habeas corpus petitioner cannot raise a claim in federal court if he did not first exhaust the claim in state court. 28 U.S.C. § 2254(b)(1)(A); Kelley v. Sec'y for the Dep't of Corrs., 377 F.3d 1317, 1343 (11th Cir. 2004). A federal claim is exhausted only if fairly presented to the state courts. McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (*citing* Picard v. Connor, 404 U.S. 270, 275 [] (1971)). A petitioner has not fairly presented his claim to the state court if such claim is presented for the first and only time in a procedural context where the merits are not considered. Castille v. Peoples, 489 U.S. 346, 351 [] (1989).

Cargile v. Secretary, Department Of Corrections, 349 Fed.Appx. 505, 507 (11th Cir. 2009); *see also* Oliver v. Cummins, 2009 WL 4058218, *3 (S.D. Ala. Nov. 20, 2009).

Section 2254(b)(1) specifically provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State." The Supreme Court has made clear that the rationale of the exhaustion requirement centers on the proper relationship between state and federal courts:

> "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state-court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan v. Boerckel, 526 U.S. 838, 845 [] (1999) (alteration in original). A state prisoner is generally barred from obtaining federal habeas relief unless the prisoner has properly presented his or her claims through one "complete round of the State's established appellate review process." Ibid.

> In practical terms, the law of habeas, like administrative law, requires proper exhaustion, and we have described this feature of habeas law as follows: "To ... 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has ***properly*** exhausted those remedies ...." Id., at 848 [] (citation omitted; emphasis in original).

Woodford, 548 U.S. at 92. A petitioner's failure to exhaust his state remedies results in the "preclusion of review in the federal court." *Id.* "Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal . . .the petitioner procedurally defaulted those claims [and] generally is barred from asserting those claims in a federal habeas proceeding." *Id.* at 93, *citing* Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 744-51 (1991). *See also* Banks v. Dretke, 540 U.S. 668, 690 (2004)("To pursue habeas corpus relief in federal court, Banks first had to exhaust 'the remedies available in the courts of the State'."), *quoting* Rose v. Lundy, 455 U.S. 509, 520 (1982); Doorbal v. Department of Corrections, 572 F.3d 1222, 1229 (11th Cir. 2009)("A state prisoner may not seek federal habeas review unless he has 'exhausted the remedies available in the courts of the State'[because he] must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition'."), *quoting* Cone v. Bell, – U.S. –, 129 S.Ct. 1769, 1781 (2009) and O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Pearson v. Secretary, Dept. of Corrections, 273 Fed.Appx. 847, 849-50 (2008)("The exhaustion doctrine requires the petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling

under review violated a federal constitutional right."), *quoting* Duncan v. Henry, 513 U.S. 364, 365-66 (1995).

In Alabama, the state court of last resort is the Supreme Court of Alabama. *See* Dill v. Holt, 371 F.3d 1301, 1303 (11th Cir. 2004)("Under Alabama law, 'one complete round' of review [] includes: (1) filing a petition for certiorari in state circuit court; (2) appealing the denial of that petition to the Alabama Court of Criminal Appeals; (3) petitioning the Alabama Court of Criminal Appeals for rehearing; and (4) seeking discretionary review in the Alabama Supreme Court. . ."); Ala.R.App.P. 4, 49 40; Kennedy v. Hopper, 156 F.3d 1143, 1145 (11th Cir. 1998) ("[I]n all criminal cases-Alabama law effectively requires a petitioner to preserve any federal constitutional error by objection at trial, and to pursue that assertion of error on direct appeal.").

"[I]t is a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts." Wainwright v. Sykes, 433 U.S. 72, 81 (1977). "A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." Bailey v. Nagle, 172 F.3d 1299, 1302 (11th Cir. 1999), *citing*, Sykes, 433 U.S. at 87. Such procedural default can occur in two ways:

> First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, Sykes requires the federal court to respect the state court's decision. Atkins v. Singletary, 965 F.2d 952, 956 (11th Cir. 1992), *cert. denied*, 515 U.S. 1165 [] (1995); Meagher v. Dugger, 861 F.2d 1242, 1245 (11th Cir. 1988). Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be

procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal. Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir.), *cert. denied*, 525 U.S. 963 [] (1998); *see also* 28 U.S.C. § 2254(b)(1)(A) (1994)(pre-AEDPA) ("An application for writ of habeas corpus ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State....").

172 F.3d at 1302-03. *See also* Maples v. Allen, 586 F.3d 879, 886 (11th Cir. 2009)("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."); Baker v. Holt, 178 Fed.Appx. 928, 930 (11th Cir. 2006)(Explaining Bailey as follows: "In the first instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. [Citation omitted]. In the second instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.")

The Alabama procedural rule concerning the sufficiency of pleading in a Rule 32 petition is a regularly followed procedural default rule. The Alabama Appellate Courts consistently hold that claims must be pleaded with the specificity required by Rules 32.3 and 32.6(b) of the Alabama Rules of Criminal Procedure. Rule 32.3 provides, in pertinent part:

> The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.

Ala.R.Crim.P. 32.3. Rule 32.6(b) provides:

> The petition must contain a clear and specific statement of the grounds
> upon which relief is sought, including full disclosure of the factual basis of
> those grounds. A bare allegation that a constitutional right has been
> violated and mere conclusions of law shall not be sufficient to warrant any
> further proceedings.

Ala.R.Crim.P. 32.6(b). It is not the pleading of a conclusion that, if true, entitles the

petitioner to relief under Ala.R.Crim.P. 32. It is the allegation of facts in a pleading that,

if true, entitles the petitioner to relief. *See* Boyd v. State, 913 So.2d 1113, 1125

(Ala.Crim.App., 2003)(A Rule 32 petition must include "full disclosure of the facts relied

upon (as opposed to a general statement concerning the nature and effect of those facts)

sufficient to show that the petitioner is entitled to relief if those facts are true."). The

procedural default rule predicated on petitioner's failure to comply with the specificity

requirements of Rules 32.3 and 32.6(b) have been recognized as a bar to federal review

by the Eleventh Circuit. *See* Jenkins v. Bullard, 210 Fed.Appx. 895, 899-900 (11th Cir.

2006) (District Court correctly dismissed petitioner's claim as procedurally defaulted

because his "Rule 32 petition, on its face, did not comply with the specificity

requirements of Rules 32.3 and 32.6(b)" . . .;"the Court of Criminal Appeals clearly and

expressly stated that its judgment affirming dismissal of [petitioner's] Rule 32 petition

rested on his failure to comply with Rules 32.3 and 32.6(b)". . .; and Rules 32.3 and

32.6(b) have been firmly established and regularly followed by the Alabama courts." ).

   In Powell v. Allen, the Eleventh Circuit explained the applicability of the

sufficiency of the pleadings bar to federal review as follows:

> . . .The Rule 32 court, affirmed by the state appellate court, found that
> Powell failed to plead facts on which an ineffective assistance claim could
> be based and, for that reason, denied Powell's claim and request for an

evidentiary hearing. *See* <u>Boyd v. State</u>, 913 So.2d 1113, 1125 (Ala.Crim.App. 2003) (only when "facts are pleaded, which, if true, entitle a petitioner to relief, [is] the petitioner then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving those alleged facts." (*citing* Ala. R.Crim. P. 32.6) (emphasis omitted)). We thus review the Rule 32 court's rejection of Powell's claim as a holding on the merits. <u>Judd</u> [v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)]; <u>Stokes v. Anderson</u>, 123 F.3d 858, 860 (5th Cir. 1997) (finding no procedural bar from state court ruling on similar pleading rule ***because the ruling "require[d] some evaluation, however cursory, of the merits of a petitioner's claim"***). In doing so, AEDPA limits our review to whether the state court's determination that Powell failed to plead sufficient facts in his Rule 32 petition to support a claim of ineffective assistance of counsel was contrary to or an unreasonable application of Supreme Court precedent. Thus, we look only to the allegations in Powell's Rule 32 petition and whether those allegations sufficiently state a claim for ineffective assistance of counsel.

602 F.3d 1263, 1272-73 (11th Cir. 2010)(emphasis added; footnotes omitted). Although the petitioner in <u>Powell</u> attempted to submit with his federal habeas petition additional allegations and evidence in support of his ineffective assistance claim, the Eleventh Circuit held that, "[i]n accordance with AEDPA, however, we do not consider such supplemental allegations or evidence when reviewing the reasonableness of the state court's resolution of this claim, which was based on the allegations before it." 602 F.3d at 1273, n. 8. Upon review, in <u>Powell</u>, of the Rule 32 petition, the Eleventh Circuit concluded "we cannot say that the that the state court's decision was contrary to or an unreasonable application of Strickland's ineffective assistance of counsel standard." (*Id*.). Consequently, the ineffective assistance claim in <u>Powell</u> was held to be procedurally defaulted and the District Court's denial of federal habeas relief was affirmed.

D. <u>Standard of Review – Federal Claims Properly Subject to Review</u>.

AEDPA provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has specifically held, with respect to

§ 2254(d)(1), as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). *See also* <u>Bell v. Cone</u>, 535 U.S. 685,

694 (2002)("The focus of the [unreasonable application] inquiry is on whether the state

court's application of clearly established federal law is objectively unreasonable, and . . .

an unreasonable application is different from an incorrect one."), *citing* <u>Williams</u>, 529

U.S. at 409-410, 411.

For purposes of § 2254(d), the Supreme Court further explained that, "[w]hen a

federal claim has been presented to a state court and the state court has denied relief, it

may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Johnson v. Williams, --- U.S. ---, 133 S.Ct. 1088, 1094 (2013), *quoting* Harrington v. Richter, --- U.S. ---, 131 S.Ct. 770, 784–785 (2011). Such claim is subject to review by federal habeas court pursuant to AEDPA's deferential standard, rather than de novo, even though state court did not expressly acknowledge that it was deciding the federal claim. Williams, 133 S.Ct. at 1097-98.

     E.     Baine's Claims.

On direct appeal, Baine argued, in sum, that the State's evidence was insufficient to prove that he committed murder. He specifically argued that there was no evidence that he either intended to cause the death of Brunson or used an object of any type to cause the death. Consequently, Baine's claims two and five, are exhausted to the extent he asserted these claims on direct appeal.

Pursuant to his post-conviction Rule 32 petitions, Baine raised at least nine claims for relief. On appeal from the denial of his Rule 32 petition, he raised thirteen claims. The claims asserted by Baine in the present federal habeas petition were among the claims asserted in his appeal from the denial of his Rule 32 petition. Consequently, the federal claims are exhausted. The Alabama Court of Criminal Appeals affirmed the denial of Baine's Rule 32 petition, holding that the claims were not pleaded with the specificity required by Ala.R.Crim.P. 32.3 and 32.6(b). The judgment entered by the Alabama Court of Criminal Appeals appears to rest solely on a procedural bar (doc. 9-20

at 2-4).  However, Respondent has, like the Mobile County Circuit Court, addressed Baine's claims on the merits and the undersigned will do the same.

(1)    <u>Comment on Post-Arrest Silence</u>.

Baine asserts that his Fifth Amendment rights were violated when, on cross-examination, the prosecutor effectively commented on his exercise of his right to remain silent after his arrest.  *See* <u>Miranda v. Arizona</u>, 384 U.S. 436, 467-473 (1966)("[I]f a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent.").  The prosecutor did so by asking Baine why he did not tell anybody his version of the events that occurred on the night Brunson was murdered until May of 2005.[9]  Baine argues that the prosecutor's question was contrary to the Supreme Court's holding in <u>Doyle v. Ohio</u>, 426 U.S. 610 (1976), that:

> The warnings mandated by [<u>Miranda</u>], as a prophylactic means of safeguarding Fifth Amendment rights, . . . require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. . . . Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

---

[9] According to the record, the first time Baine told anyone about the offense was in May of 2005 when he was evaluated to determine his mental competence to stand trial and at the time of the offense. *See* Doc. 9-1 at 19-24.

426 U.S. at 617-18 (citations and footnote omitted). The State argues that <u>Doyle v. Ohio</u> is not implicated in this case and the prosecutor's question did not violate Baine's Fifth Amendment right.

According to the State, the testimony of the investigator and other officers involved in the investigation "showed that Baine was not advised of his <u>Miranda</u> rights at any time and was not interrogated." (Doc. 9 at ¶ 34). Detective William Givens testified that when he found Baine, he was lying on the floor of a bedroom and there was blood on his pants and a "substantial amount of blood on his shoes." (Doc. 9-3 at 49). There is no evidence that, in view of all the evidence found at the scene of the arrest, the police ever actually interrogated Baine about the murder. (*Id*. at 48-51, 74-76).[10] Baine himself testified that he never told the police his version of the events on the night of the murder "Because nobody wanted to talk to me when I had a lawyer." (Doc. 9-6 at 29).[11]

The Supreme Court, in <u>Fletcher v. Weir</u>, 455 U.S. 603 (1982), held that it was not impermissible to impeach a defendant during cross examination about his pre-arrest failure "to report the incident to the police and offer his exculpatory story." 455 U.S. at 604, n.1 and 605-606. The Supreme Court emphasized that:

---

[10] During a hearing on Baine's motion to suppress conducted on April 18, 2005, Detective Givens testified that, "[u]pon arriving at headquarters, we took [Baine's] clothes as evidence and I attempted to interview the defendant and he refused to talk and at that point, we just completed the paperwork and transported him to Metro Jail." (Doc. 9-1 at 76).

[11] *See also* Doc. 20 at 6 ("the lead investigator says that after arrest 'he took the remainder of the defendant's clothing and then at the time he attempted to interview the defendant' at which time the defendant exorcized his 5th Amend. Right to remain silent and requested a lawyer.")

> In the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony.

455 U.S. at 607. *See also* Jenkins v. Anderson, 447 U.S. 231, 240 (1980) (explaining that "no governmental action induced petitioner to remain silent before arrest" and therefore "the fundamental unfairness present in Doyle is not present"). The Eleventh Circuit has applied the Fletcher decision in a case in which, like Baine's case, defendant "failed to prove that any of his silence before taking the stand at trial came after he was given Miranda warnings [and,] [i]f anything, the record indicates that he was not read his Miranda warnings at any time in connection with this crime." Branch v. Secretary, Fla. Dept. of Corrections, 638 F.3d 1353, 1355 (11th Cir. 2011). *See also* United States v. O'Keefe, 461 F.3d 1338, 1346 (11th Cir. 2006) (explaining that "due process is not violated by the use for impeachment purposes of a defendant's silence prior to arrest, or after arrest if no Miranda warnings are given"); United States v. Rivera, 944 F.2d 1563, 1568 (11th Cir. 1991) ("[T]he government may comment on a defendant's silence when it occurs after arrest, but before Miranda warnings are given.").[12]

---

[12] Baine's reliance on United States v. Edwards, 576 F.2d 1152 (5th Cir. 1978), is unavailing. The defendant in Edwards did not testify at trial and the prosecutor's comments came during closing arguments to the jury. In addition, the Court in Edwards makes no reference to whether or not Miranda warnings were given to the defendant. Similarly, United States v. O'Sullivan, 255 Fed.Appx. 407 (11th Cir. 2007), is distinguishable in that it is unclear whether defendant had ever been given Miranda warnings, there is no indications that defendant took the stand to testify, and the prosecutor's comments on defendant's silence came during his closing arguments, not cross-examination.

Consequently, the prosecutor's question to Baine during his cross-examination did not constitute, under Fletcher, a violation of Baine's constitutional rights. The question, therefore, did not constitute grounds for federal habeas relief.

(2)     Claim Concerning Jury Instructions.

Baine next contends that he was denied due process when the trial court failed to give a jury instruction on manslaughter as a lesser-included offense of murder. Baine seeks to have Beck v. Alabama, 447 U.S. 625 (1980), which applies solely to capital death sentence cases, applied to his noncapital murder case.

In Beck, the Supreme Court addressed Alabama's death penalty statute which specifically prohibited the trial judge from giving a lesser included felony murder offense instruction to the jury. 447 U.S. at 627-29, n. 2 and n. 3, *citing* Alabama Code §§ 13-11-2(a) and (b) (1975); Jacobs v. State, 361 So.2d 640, 646 (Ala. 1978) (Torbert, C. J., concurring in part and dissenting in part), *cert. denied*, 439 U.S. 1122 (1979); Evans v. Birtton, 472 F.Supp. 707, 714 (SD Ala. 1979). Although Baine argues, in sum, that his constitutional right to due process requires the inclusion of an instruction on manslaughter as a lesser included offense, neither Beck nor Montana v. Egelhoff, 518 U.S. 37 (1996), also relied on by Baine, sanctions such a holding. The Supreme Court acknowledges in Beck that "we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process." Beck, 447 U.S. at 637. The Supreme Court nonetheless then decided, based upon the "significant constitutional difference between the death penalty and lesser punishments," that the due process clause does require the giving of a lesser included offense instruction in a capital case and that,

"if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, Alabama is constitutionally prohibited from withdrawing that option from the jury in a capital case." *Id*. at 638. The Supreme Court also declared in Beck that "[w]e need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case." *Id.* at n. 14.

Although the Due Process Clause does not require the inclusion of a lesser included offense instruction in a noncapital case, the Supreme Court acknowledged in Beck that "[t]he Alabama rule in cases other than capital cases is that the defendant is entitled to a lesser included offense instruction if 'there is any reasonable theory from the evidence which would support the position'." Beck, 447 U.S. at n.5, *quoting* Fulghum v. State, 291 Ala. 71, 75, 277 So.2d 886, 890 (1973), a case in which the Alabama Supreme Court found no error for the trial court "to refuse to instruct the jury on manslaughter in the second degree [because] [t]here is nothing in the record tending to show the killing was unintentional or accidental." The specific standard applied by the Alabama Supreme Court is as follows:

> Where it is clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree, and where it clearly shows from the evidence that the defendant was either guilty of murder or voluntary manslaughter or innocent, and, where there is no evidence tending to show that the killing was unintentional or accidental, a charge on manslaughter in the second degree is unnecessary and is not proper.

291 Ala. at 75-76, 277 So.2d at 890, *citing* Ware v. State, 147 Ala. 699, 41 So. 181 (1906); Ragsdale v. State, 134 Ala. 24, 32 So. 674 (1901); Pierson v. State, 99 Ala. 148,

13 So. 550 (1892).   The record in this case fails to support any entitlement by Baine to a manslaughter instruction to the jury.

Baine did not testify at trial that he accidentally or unintentionally killed Brunson. Instead, he testified that Brunson's injuries were caused by "a white guy on top of him . . . beating him."  (Doc. 9-6 at 2).   According to Baine's testimony, he "hit the guy that was on top of [the victim] and got him off, knocked him off, basically, and we started fighting."  (*Id*. at 3).   Then a black guy who was with that white guy "hit me on the back of the head, side of the head or something" after which "[t]hey took off."  (*Id*. at 3-4).   In his habeas petition, Baine argues that he was entitled to the lesser-included offense of manslaughter because his voluntary intoxication at the time of Brunson's murder "relates to the element of intent."  (Doc. 20 at 12-13; *see also* Doc. 1-1 at 9).   Baine further argues that:

> As capital murder and murder both require a specific intent element, the due process guaranteed by <u>Beck</u> (lesser included offense instruction due to intoxication) should extend to the present case. Especially considering that Alabama state law requires "that the state <u>must</u> instruct as to how this (voluntary intoxication) relates to the element of intent."

(Doc. 20 at 12, emphasis in original; *quoting in part* <u>Pilley v. State</u>, 930 So2d 550 , 561-62 (Ala.Crim.App. 2005).  Baine has failed, however, to consider what, according to the Court in <u>Pilley</u>, constitutes "evidence of intoxication" necessary to entitle a defendant to such an instruction:

> The Alabama Legislature has defined "intoxication" to include "a disturbance of mental or physical capacities resulting from the introduction of any substance into the body." § 13A-3-2(c)(1), Ala. Code 1975. Thus, evidence that the defendant ingested alcohol or drugs, standing alone, does not warrant a charge on intoxication. "[T]here must be evidence that the

ingestion caused a disturbance of the person's mental or physical capacities and that that mental or physical disturbance existed at the time the offense was committed." Lee v. State, 898 So.2d 790, 838 (Ala.Crim.App. 2001) (opinion on return to remand), *cert. denied*, 898 So.2d 874 (Ala.), *cert. denied*, 543 U.S. 924, 125 S.Ct. 309, 160 L.Ed.2d 222 (2004). *See also* Maples v. State, 758 So.2d 1, 23 (Ala.Crim.App.), *aff'd* 758 So.2d 81 (Ala. 1999).

930 So.2d at 562. "Additionally, the court should charge on voluntary intoxication only when there is a sufficient evidentiary foundation in the record for a jury to entertain a reasonable doubt as to the element of intent." *Id*., *citing* Ex parte McWhorter, 781 So.2d 330, 342 (Ala. 2000). The facts pleaded by Baine, even taken to be true, do not support a claim that his constitutional rights were violated by the failure to give a jury instruction on manslaughter as a lesser-included offense of murder. Consequently, such a claim does not constitute grounds for federal habeas relief.

(3)     Claim Concerning Judicial Bias.

Baine argues, in sum, that he did not receive a fair trial because the trial judge, former Circuit Judge Herman Thomas, was unfit to preside over the trial based on his "unhealthy mindset, unethical practice, and his preconceived judicial bias concerning his view of accused persons in general, rendering his trial and sentencing a violation of defendant's Sixth Amendment right to a fair and impartial trial." (Doc. 1 at p. 12; Doc. 1-1 at 22-23). Baine contends that Judge Thomas's bias was demonstrated by his denial of various motions filed by Baine during the course of his trial. Baine's allegations are essentially identical to the claims he raised in his Rule 32 petition, which were held to be without merit because "Baine wholly fails to provide factual support for his allegations of

judicial bias." (Doc. 9-16 at 41). The Circuit Court predicated its conclusion on the

following:

> The starting point is that "[a]ll judges are presumed to be impartial and unbiased." *See* Ex parte Grayson, 665 So.2d 986, 986 (Ala. Crim. App. 1995). Baine points to certain rulings on motions that went against Baine but "[a]dverse rulings during the course of the proceedings are not by themselves sufficient to establish boas and prejudice. *See* Hartman v. Board of Trustees of the University of Alabama, 436 So.2d 837, 842 (Ala. 1983).

(Doc. 9-16 at 41). *See also* Moreland v. State, 469 So.2d 1305, 1307 (Ala.Crim.App.

1985)("Evidence must be presented to prove the judge possesses a personal bias as

opposed to one that is judicial in nature. Personal as opposed to judicial bias is

characterized by an attitude of extrajudicial origin derived *non coram judice*."). This

state law is consistent with federal law:

> Federal cases have elaborated that judicial bias or prejudice rising to a level that violates due process must stem from a predisposition against the defendant that is actual, *see* Nichols v. Sullivan, 867 F.2d 1250, 1254 (10th Cir.), *cert. denied*, 490 U.S. 1112, 109 S.Ct. 3169 (1989); Dyas v. Lockhart, 705 F.2d 993, 996 (8th Cir.), *cert. denied*, 464 U.S. 982, 104 S.Ct. 424 (1983), or that is readily presumed from a judge's conduct or comments, or connection to one of the participants, *see* Bracey [v. Gramley, 81 F.3d 684, 688 (7th Cir.1996)]; DelVecchio v. Illinois Dept. of Corrections, 31 F.3d 1363, 1380 (7th Cir.1994) (*en banc*) (Noting, however, that the "bad appearances" alone do not rise to the level of a due process violation; instead the judge must be faced "with circumstances that present 'some [actual] incentive to find one way or the other' or 'a real possibility of bias.' "), *cert. denied*, 514 U.S. 1037, 115 S.Ct. 1404 (1995) . . . The bias must be personal as opposed to judicial in nature, *see* United States v. Carmichael, 726 F.2d 158, 160 (4th Cir. 1984); United States v. Carignan, 600 F.2d 762, 763 (9th Cir, 1979), derived from extrajudicial sources and not merely from the evidence or record before the judge, *see* United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710 (1966); Sine v. Local No. 992 Int'l Bhd. of Teamsters, 882 F.2d 913, 914 (1989), and beyond what the balanced judgment of a reasonable person could be expected to overcome. *See* In re Murchison, 349 U.S. 133, 136, 75 S.Ct.

623, 625 (1955); <u>Fero v. Kerby</u>, 39 F.3d at 1478–79; <u>Partington v. Gedan</u>, 880 F.2d at 132; <u>United States v. Conforte</u>, 624 F.2d 869, 881 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568 (1980).

<u>Bell v. Haley</u>, 2000 WL 33682804, * 16 (M.D. Ala. March 3, 2000).   Under the standards of both federal and state law, Baine has failed to allege facts that demonstrate the requisite personal bias to support a constitutional claim of judicial bias resulting in a denial of a fair trial.

(4)    <u>Claim Concerning Denial of Discovery.</u>

Baine asserts that the State failed to disclose "any and all statements made by State's witness Daryl Blount."  (Doc. 1 at 14; Doc. 1-1 at 11-15).  Baine argues that this failure to produce constitutes a constitutional error because the evidence "would have impeached eye witness testimony."  (*Id*.).  Baine asserts that he is restating the claims he raised in the State proceedings pursuant to <u>Brady v. Maryland</u>, 737 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  (Doc. 20 at 24).   The Circuit Court addressed this claim as follows:

> Blaine complains about not receiving the statement of one of the State's witnesses, Daryl Blount, but there is no evidence that such a statement ever existed.  In fact, although Blount testified that he made a report to the police, the questioning by the prosecutor indicated that the State had no such report. [Trial Transcript, p. 85].  Moreover, even if a statement did exist, the State had no obligation to produce it to Baine.  See [Ala.R.Crim.P.] Rule 16.1(e) (the State does not have to produce the statements of its witnesses).

(Doc. 19-16 at 40).  A review of the record confirms that no written statement of Blount exists.

In addition, the record fails to support a contention that Blount made any statement that could be considered exculpatory. Blount testified at Baine's trial that, after noticing a body lying on the ground in front of he and Alvin Roberts:

> [A]s we walked towards the body of Brunson, I saw somebody get up like they were bending over towards him and ran towards the bushes and they ran around the backside of the building instead of the front of the building and they – apparently, they fell because I saw the hedge shake and some object or something flew out of his hand, I don't know what it was, it looked like a gun, it could have been a bat or anything.

(Doc. 9-3 at 5). At this juncture, the trial judge sustained an objection made by Baine's counsel that Blount's testimony about the "object" was speculation. When the prosecutor asked Blount whether he knew the person he saw bending over the body, Blount testified that "I really couldn't recognize it, but it was under a street light and if I'm not mistaken, it looked like Baine." (Doc. 9-3 at 6). The trial judge sustained an objection to that testimony and cautioned Blount: "If you would, sir, don't speculate. When she asks you a question, please respond to what you actually did know or observe, please." (Doc. 9-3 at 6). Blount was asked on cross-examination about whether he told anyone that he "saw somebody running from the body." (Doc. 9-3 at 13). Blount responded that he told "the police that came into the park that night," does not know whether that officer wrote down what he said, but was told by the police "to step to the side, because they had an eyewitness." (Doc. 9-3 at 14).

Consequently, the record indicates no more than that an attempt was made by Blount to tell an unidentified police officer that he saw something but that no statement was taken from Blount. The record also establishes that what Blount attempted to convey

about what he saw that night was not exculpatory.  The record further shows that

Blount's failure to tell anyone else for two years about what he saw that night was used at

trial to impeach his testimony.[13]  (Doc. 9-3 at 22).  Blaine has asserted no allegations of

any facts that are either supported by the record or support his claim of a <u>Brady</u> violation.

Similarly, there is no evidence, either documentary or testimonial, that Blount

made any agreement with the State in return for his testimony at Baine's trial.  Baine

merely asserts his opinion "that the prosecutor had to have made some type of

aggreement [sic] with states witness Blount in exchange for his favorable testimony."

(Doc. 20 at 27).   Baine has proffered no facts to support a <u>Giglio</u> violation.  The State

courts were, therefore, correct when they held that Baine failed to plead sufficient facts to

support either a <u>Brady</u> or a <u>Giglio</u> claim, and that such claims were thus barred by

Ala.R.Crim.P. 36.6(b).

(5)    <u>Perjury Claim</u>.

Baine argues that, in the event no written statement exists of Blount's report to the

police in the park that night, then Blount committed perjury at trial.[14] (Doc. 1 at 15-16;

---

[13] This case is distinguishable from <u>Greene v. McElroy</u>, 360 U.S. 474, 496 (1959), a case cited by Baine, which involved executive government orders  "whereby persons are deprived of their present civilian employment and of the opportunity of continued activity in their chosen professions without being accorded the chance to challenge effectively the evidence and testimony upon which an adverse security determination might rest."  360 U.S. at 496.  It is also distinguishable from <u>Kyles v. Whitley</u>, 514 U.S. 419, 424-431 and 454 (1995), in which evidence that was clearly favorable and exculpatory was withheld from the defendant in a capital murder case.

[14] Baine argues that the Eleventh Circuit has held: "We should hold that government manufacture of incriminating evidence that is subsequently introduced at trial with knowledge that it has been manufactured is a constitutional error and not subject to the harmless error rule."  (Doc. 20 at 25, *citing* <u>United States v. Campbell</u>, 223 F.3d 1286, 1294 (11th Cir. 2000)(J. Godbold, Dissenting).  This is, (Continued)

Doc. 1-1 at 21).  As stated previously, however, the evidence of record establishes that

Blount did no more than attempt to tell a police officer that night what he saw but was

told to step aside because they already had an eyewitness.   This case is, therefore,

distinguishable from the cases relied on by Baine in which a State knowingly used

perjured testimony.  *See e.g.*, Napue v. People of State of Ill., 360 U.S. 264, 269-70

(1959) ("The principle that a State may not knowingly use false evidence, including false

testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does

not cease to apply merely because the false testimony goes only to the credibility of the

witness.") There is no evidence of perjury in this case, known or unknown, and the State

courts were, therefore, correct when they held that Baine failed to plead sufficient facts to

support a claim of perjury.  The perjury claim was therefore properly barred by

Ala.R.Crim.P. 36.6(b).

(6)    Evidentiary Claims.[15]

Baine contends that he was denied due process by the admission of evidence that

had not been subjected to scientific testing.  (Doc. 20 at 28-29).  He argues that

"[w]ithout any scientific testing performed, the defendant was effectively denied his right

---

however, not only mere dicta in a dissenting opinion, but inapplicable to the present case inasmuch as
there is no evidence that the State manufactured any evidence against Baine.

[15] Baine includes a destruction of evidence claim concerning "a park bench with what appeared to
be a bloody handprint on it . . . [which] was placed back into the park without any fingerprint testing
being performed."  (Doc. 20 at 28).  Baine speculates that "the bench could very well be the 'object' that
caused the death of Brunson."  (*Id.*).  Baine's speculation is not supported by any evidence of record in
this case, including the coroner's testimony concerning the cause of death.  (Doc. 9-5 at 309-15; 347-48).

to confront the evidence against him . . . [and] the jury was allowed to infer that all untested evidence must have come from Brunson rather than the defendant." (Doc. 20 at 29). Baine does not specifically identify any item of evidence that he is challenging. Rather, the record establishes that every item of evidence was specifically identified in terms of its source and its chain of custody and each was addressed by Baine's counsel during cross-examination of the witnesses through which the evidence was admitted. *See e.g.* Doc. 9-3 at 75, 92-94, 96-97; Doc. 9-4 at 10-12, 13-14, 34, 47-52. The evidentiary rulings at issue here did not affect the fundamental fairness of Baine's trial and are, therefore, not subject to habeas review.

The Eleventh Circuit has explained the standard applicable for habeas review of evidentiary claims as follows:

> Federal courts generally do not review a state court's admission of evidence in habeas corpus proceedings. *See* McCoy v. Newsome, 953 F.2d 1252, 1265 (11th Cir.), *cert. denied*, 504 U.S. 944, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992). We will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial. *See* Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir.) (stating that we "inquire only to determine whether the error was of such magnitude as to deny fundamental fairness to the criminal trial.") (citations omitted), *cert. denied*, 516 U.S. 946, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995); McCoy, 953 F.2d at 1265. "A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical, highly significant factor.' " Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir. 1998) (*quoting* Osborne v. Wainwright, 720 F.2d 1237, 1238 (11th Cir. 1983)), *cert. denied*, 525 U.S. 963, 119 S.Ct. 405, 142 L.Ed.2d 329 (1998).

Mills v. Singletary, 161 F.3d 1273, 1289 (11th Cir. 1998), *cert. denied* 528 U.S. 1082 (2000). The record in this case does not support a contention that any of the evidence was erroneously admitted and affected the fundamental fairness of Baine's trial.

Baine further argues that he was denied a fair trial because his counsel allowed the prosecutor to mislead the jury[16] regarding certain DNA swabs taken from the victim but attributed to Baine. (Doc. 1 at 16).   Baine has not, however, presented an adequate factual basis to challenge the DNA evidence admitted in this case.  Nor does the record support any claim of error regarding the admission of DNA evidence in this case.

The State courts' findings that Baine's evidentiary claims were precluded because they were insufficiently pleaded were neither contrary to, nor involved an unreasonable application of, established Supreme Court law.  Consequently, Baine's evidentiary claims do not constitute grounds for habeas relief.

(7)     Ineffective Assistance of Counsel Claims.

In this case, Baine argues that his trial counsel was ineffective when "he failed at trial to request instruction on lesser included offense" (doc. 1 at 17); "he failed to object to undisclosed statement made by State's witness Daryl Blount . . . that he swore under oath that he made to police the night of the crime" (*id*.); "he failed at trial to make a timely objection to Prosecutor's question about why the defendant had not told his exculpatory story prior to trial" (*id*. at 18); "he failed at trial to object to untested evidence being admitted" (*id*.); he "allowed the State to mislead the jury . . . into believing that swabs of DNA were taken from the victim's (Brunson) hands but were in fact taken from the defendant" (*id*. at 16); "he failed to appeal adverse ruling by trial

---

[16] Blaine includes in this claim the assertion that appellate counsel likewise allowed the Court of Criminal Appeals to be mislead by the same "confusion about DNA."  (Doc. 1 at 16).

Judge on motion to suppress" (*id*. at 19); "he failed to pursue Defendant's motion for impeaching information prior to and up until trial" (*id*.); and "he failed to obtain his own expert to refute the State's findings and properly (adequately) impeach the states DNA expert" (doc. 20 at 30). Baine also contends that his appellate counsel was ineffective when he failed to raise the aforementioned claims on direct appeal. (Doc. 1 at 17, 18, 19; Doc. 20 at 42-43).

A two-fold analysis is applied to claims of ineffective assistance of counsel as follows:

> To succeed on a claim of ineffective assistance, a habeas petitioner must satisfy both prongs of the test set out by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The performance prong requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id*. at 687-89, 104 S.Ct. at 2064-65. The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense. *Id*. at 687, 104 S.Ct. at 2064.

> Unless a petitioner satisfies the showings required on both prongs, relief is due to be denied. Id. As a result, once a court decides that one of the requisite showings has not been made it need not decide whether the other one has been. *Id*. at 697, 104 S.Ct. at 2069 (A court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one."); Duren v. Hopper, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong"). . . .

> To establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[P]etitioners must affirmatively

37

> prove prejudice because '[a]ttorney errors come in an infinite variety and
> are as likely to be utterly harmless in a particular case as they are to be
> prejudicial. [T]hat the errors had some conceivable effect on the outcome of
> the proceeding' is insufficient to show prejudice." Gilreath v. Head, 234
> F.3d 547, 551 (11th Cir. 2000) (alteration in original) (*quoting* Strickland,
> 466 U.S. at 693, 104 S.Ct. at 2067).

United States v. Butcher, 368 F.3d 1290, 1293-94 (11th Cir. 2004). In making the

performance determination, conduct must be evaluated from the attorney's perspective at

the time in order to avoid the distorting effects of hindsight. Strickland, 466 U.S. at 689.

As the Eleventh Circuit has more recently held:

> To prevail on a claim of ineffective assistance of counsel, a defendant must
> show (1) his counsel's performance was deficient, and (2) this deficient
> performance prejudiced his defense. Strickland v. Washington, 466 U.S.
> 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). An attorney's
> performance is deficient if he does not provide reasonably effective
> assistance. *Id.*, 104 S.Ct. at 2064. "Judicial scrutiny of counsel's
> performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. In
> evaluating an attorney's conduct, a court must avoid "the distorting effects
> of hindsight" and must "evaluate the conduct from counsel's perspective at
> the time." *Id.*, 104 S.Ct. at 2065.

Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009). *See also* Young v. United

States, 2012 WL 1952194, * 3 (N.D. Ala. April 24, 2012)("Even if counsel made an error

so egregious as to be outside the broad scope of competence expected of attorneys, a

movant can obtain relief only if the error caused actual prejudice [and], [i]n order to

establish actual prejudice, a petitioner must show that 'there is a reasonable probability

that but for the attorney's unprofessional errors, the result of the proceeding would have

been different'."), *citing* Strickland, 466 U.S. at 691–92, and *quoting* Armstead v. Scott,

37 F.3d 202, 207 (5th Cir. 1994).

Once a court decides that one of the requisite showings has not been made it need not decide whether the other one has been. Strickland, 466 U.S. at 697 (A court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one."); Duren v. Hopper, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong"). Given this exacting burden, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*).

Baine has failed to show that either his trial counsel or appellate counsel was ineffective, the requisite first prong of the standard set forth in Strickland. *See* Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) (no ineffective assistance of counsel where filing of motion is futile); *in accord* Rasheed v. Smith, 221 Fed.Appx. 832, 836 (11th Cir. 2007) (failure to file a motion which would be futile is not deficient performance of counsel under Strickland); and United States v. Costa, 691 F.2d 1358, 1363 (11th Cir. 1982) ("failure to object to admissible evidence does not constitute ineffective assistance of counsel."). Baine specifically failed, for the reasons stated above, to show:

a.      that counsel was ineffective for failing to "request instruction on a lesser included offense" because the record in this case fails to support any entitlement by Baine to a manslaughter instruction to the jury.

b.      that counsel was ineffective for failing "to object to the undisclosed statement made by . . . Daryl Blount" because the record confirms that no written

statement of Blount exists and the record fails to support any contention that Blount made a statement that could be considered exculpatory.

c.     that counsel was ineffective for failing "to make a timely objection to Prosecutor's question about why [he] had not told his exculpatory story prior to trial" because the prosecutor had not improperly commented on Baine's silence because Baine had not been given Miranda warnings at the time in question.

d.     that counsel was ineffective for failing "to object to untested evidence being admitted" because the record establishes that every item of evidence was identified in terms of its source and its chain of custody and each was addressed by Baine's counsel during cross examination of the witnesses through which the evidence was admitted.

e.     that counsel was ineffective for allowing the jury to be confused by certain DNA evidence because none of the evidentiary ruling in this case affected the fundamental fairness of Baine's trial and they are, therefore, not subject to habeas review.

f.     that counsel was ineffective for failing to appeal an adverse ruling on his motion to suppress because there exists no basis for such an appeal.

g.     that counsel was ineffective for failing to pursue his motion "for impeaching evidence" because the record confirms that no such evidence exists.

h.     that counsel was ineffective for failing "to obtain his own expert to refute the State's [DNA] findings" because no evidentiary basis exists on which to question the

accuracy of the DNA results reported in this case. Because Baine has failed to meet the requisite first prong of Strickland, the Court need not address the prejudice prong. *See* Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010)("[C]ourt need not address the performance prong if petitioner cannot meet the prejudice prong and vice-versa.").

    (8)    <u>Claims Concerning Suppression Hearing</u>.

Baine filed a motion to suppress at trial, which was denied after a hearing. Baine's appellate counsel did not raise an issue on appeal challenging the trial judge's denial of the motion to suppress. (Doc. 1 at 22; Doc. 1-1 at 24-25). Baine argues that his arrest and the evidence admitted at trial were the result of an unlawful search and seizure because the police did not have an arrest warrant or probable cause to enter the house where he was found. (*Id*.) Appellate counsel is alleged to have been ineffective for failing to raise the matter on appeal.

As a general matter that, even if a search has occurred without a warrant and without individualized suspicion, a Fourth Amendment violation does not necessarily occur. The Fourth Amendment does not prohibit all searches, only those that are unreasonable. Skinner v. Ry. Labor Execs.' Ass'n, 489 U.S. 602, 619 (1989) ("the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable"); Terry v. Ohio, 392 U.S. 1, 9 (1968) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.") (*quoting* Elkins v. United States, 364 U.S. 206, 222 (1960)). And "[a]lthough as a general matter,

warrantless searches 'are per se unreasonable under the Fourth Amendment,' there are 'a few specifically established and well-delineated exceptions' to that general rule." City of Ontario, Ca. v. Quon, ––– U.S. ––––, 130 S.Ct. 2619, 2630 (2010) (*quoting* Katz v. United States, 389 U.S. 347, 357 (1967)); Nat'l Treasury Employees Union v. Von Raab, 489 U.S. 656, 665 (1989) ("neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance").

The suppression hearing in this case was conducted on April 18, 2005. (Doc. 9-1 at 69-94). The investigators with the City of Mobile Police Department testified that they received information from a witness, who had been with Baine and the victim the night of the murder, that the two had been drinking and arguing back and forth that night for no apparent reason. (*Id*. at 71-72). The witness told the investigators where Baine had been staying for the past few days. (*Id*., at 72). It was in a vacant, run-down rental property. (*Id*. at 72-73). The house appeared to be abandoned. (*Id*. at 82). The house was unlocked when officers arrived and no one responded when they knocked on the door. (*Id*. at 83). The officers ultimately spoke with the owner of the property who confirmed that Baine had no reason to be there. (*Id*. at 89).

The police found Baine asleep upstairs, exactly where the witness had said he would be. (Doc. 9-1 at 73, 74). This was about nine hours after the murder. (*Id.* at 74). The officers handcuffed him and escorted him outside, advising him that they had to go "to headquarters and talk about circumstances." (*Id*. at 74). The investigator testified

that "he shook his head, implying that he knew what I was talking about." (*Id*. at 75). The investigator saw blood on Baine's clothing, his shoes and socks, he had scrapes on his hands, and his right hand was swollen from his knuckles down to the fingertips. (*Id*. at 75). The investigator testified that "[u]pon arriving at headquarters, we took his clothes as evidence and attempted to interview the defendant and he refused to talk and at that point, we just completed the paperwork and transported him to Metro jail." (*Id*. at 76). A search warrant was then obtained for the house where Baine was found, which was executed and Baine's belongings seized. (*Id*. at 77).

Baine's contention that "the police did not have an arrest warrant or probable cause to enter the house where he was found" is without merit. Baine did not have permission to occupy the house in which he was found by the police. Consequently, Baine was without standing to object to the entry of the police in the vacant house where he was found. It has been held that:

> [I]t must be emphasized again that standing ... is not available to those whose presence is 'wrongful.' Thus, a trespasser cannot claim standing by virtue of his presence at the time and place where the alleged Fourth Amendment violation has occurred. The burden is on the defendant to establish that his presence was not wrongful, and this burden is not met by merely establishing that the premises are not occupied by anyone else or that the premises belong to a friend. Usually, what is required is a showing that a person authorized to do so gave permission for the defendant to be present on that particular occasion, although such a particularized consent need not be shown if by custom the defendant was allowed to come on the premises whenever he chose to do so.

Hamm v. State , 564 So.2d 453, 458-59 (Ala. Crim. App. 1989)(citation omitted). The arrestee may have a subjective expectation of privacy; however, it may not be one that

the law recognizes as legitimate, "one that society is prepared to recognize as 'reasonable'." *Id.*, *citing* <u>Rakas v. Illinois</u>, 439 U.S. 128, 151 (1978) (Powell, J., concurring)(*quoting* <u>Katz v. United States</u>, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). "[E]ven a property interest in premises may not be sufficient to establish a legitimate expectation of privacy with respect to particular items located on the premises or activity conducted thereon." <u>Rakas</u>, 439 U.S., at 144, n. 12. Baine has made no attempt to establish that his presence at the vacant house was not wrongful and, therefore, cannot show that he had a legitimate expectation of privacy in that location. The entry of the police officers into the vacant house to look for Baine was not, therefore, an unlawful search and seizure.

In addition, based upon the information the police received that Baine had been with the victim the night of the murder and that the two had been arguing, there was sufficient evidence to arrest Baine when the police located him and saw blood on his clothing. Once in police custody, the seizure of the clothing worn by Baine was proper. *See* <u>United States v. Edwards</u>, 415 U.S. 800, 803–04 (1974)("[C]lothing or other belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis or that the test results are admissible at trial.").

The State Court's decision to deny Baine's motion to suppress was, therefore, neither contrary to nor an unreasonable application of Supreme Court precedence. Consequently, Baine's claims concerning the denial of his motion to suppress do not constitute grounds for habeas relief.

(9)     Sufficiency of the Evidence Claim.

Baine argues that the evidence offered at his trial was insufficient to support his conviction for murder.  (Doc. 1 at 21; Doc. 20 at 35).  Baine specifically challenges the conviction on the grounds that "the element of intent has not been proven beyond a reasonable doubt."  (Doc. 20 at 35).   Baine argues that, because "the medical examiner testified that no object was used except the possible use of hands and feet," "[t]his shows that at the worst, Brunson died as a [sic] unfortunate result of a fist fight or an accident resulting from a fist fight [and] [t]his negates the element of intent."  (Doc. 1 at 21). Baine further argues that he could not have intended the death of Brunson because of the "extreme amounts of alcohol involved."  (Doc. 1 at 21).

In Parker v. Matthews, --- U.S. --- , 132 S.Ct. 2148 (2012), the Supreme Court held that "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."  132 S.Ct. at 2152, *quoting* Cavazos v. Smith, 565 U.S. ——, 132 S.Ct. 2, 4 (2011) (*per curiam*). The Supreme Court further held that "evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'."  *Id., quoting* Jackson v. Virginia, 443 U.S. 307, 319 (1979).   In addition, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the 'decision was 'objectively unreasonable'.' " *Id., quoting* Cavazos, 132 S.Ct. at 4.

The Supreme Court has discussed the high burden related to sufficiency of the evidence challenges on habeas petition as follows:

We have made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " Ibid. (quoting Renico v. Lett, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

Coleman v. Johnson, --- U.S. --- , 132 S.Ct. 2060, 2062 (2012). See also Jones v. Secretary Dept. of Corrections, 503 Fed.Appx. 749, 751 (11th Cir. Jan. 8, 2013)("[T]he only question for the reviewing state court under Jackson is "whether the finding was so insupportable as to fall below the threshold of bare rationality [and] [t]hat determination in turn is entitled to considerable deference under AEDPA.")(citing Coleman, 132 S.Ct. at 2065).

Baine's conviction was affirmed by the Alabama Court of Criminal Appeals in a decision that was not contrary to the principals enunciated by the Supreme Court in Jackson and its progeny. The evidence in this case was sufficient to support the state court jury's determination that Baine committed murder. Based on all the facts presented, the jury could reasonably have concluded that Baine intended to kill Brunson and used his feet and shoes to cause Brunson's death. Viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson, 443 U.S. at 319. Because the state

court was not "objectively unreasonable" in rejecting Baine's sufficiency of the evidence challenge, this court may not overturn that decision. <u>Coleman</u>, 132 S.Ct. at 2062.

       (10)   <u>Destruction of Evidence Claim</u>.

Baine contends that a park bench with a bloody handprint on it was removed and later replaced without any scientific testing. He argues that "potentially exculpatory evidence has been effectively destroyed [and] there is now no way to determine whose DNA it might have been on the bench or fingerprints." (Doc. 1 at 21).

The trial court found that these bare allegations were insufficiently pleaded as required by Rule 32.6(b) of the Alabama Rules of Criminal Procedure, and that, "[w]ithout a factual basis of support, Baine's allegations that the State concealed, destroyed or failed to produce evidence constitute 'a bare allegations that a constitutional right has been violated' . . . and this alleged ground for relief is due to be summarily dismissed under Rule 32.7(d)." (Doc. 9-167 at 40-41). The trial court further reasoned that:

> Baine supplied the Court with some portions of the trial transcript which indicate that the State did not forensically test all of the evidence uncovered in the investigation, but that fact does not sufficiently support allegations that the State concealed or suppressed evidence. The State's forensic expert testified that certain evidence was not tested because he felt he had gathered enough evidence. "The State is not required to perform every possible test or to produce any feasible evidence that may hold little probative value." *Yancy v. State*, --- So.2d --- , 2009 WL 725198 (Ala. Crim. App. 2009).

(Doc. 9-16 at 39-40). The Court of Criminal Appeals also found the claim precluded by Rule 32.6(b). (Doc. 9-20 at 3). The Alabama procedural rule concerning the sufficiency of pleading in a Rule 32 petition is a regularly followed procedural default rule.

47

"AEDPA limits a Federal Court's review in such cases to whether the state court's determination that [Petitioner] failed to plead sufficient facts in his Rule 32 petition . . . was contrary to or an unreasonable application of supreme Court precedence." Powell, 602 F.3d at 1273.

A review of the record confirms that there was evidence submitted at trial about the blood on Baine's clothing and body from which the jury could infer that Baine and Brunson fought. Baine testified that a saw "a white guy on top of [Brunson] . . . beating him" and that he ran to Brunson's aid, knocked the guy off and started fighting him. (Doc. 9-6 at 2, 3). Baine further testified that, at this point, a black guy who had been standing nearby watching "hit me on the back of the head, side of the head or something." (Doc. 9-6 at 2, 3). After that, "[t]hey took off" and Baine approached Brunson, whom he described as "really kind of dazed, he wasn't really conscious good." (Doc. 9-6 at 4). Baine testified that Brunson did not want his help, so he "went across the street to the Circle K and bought a fifth of wine . . . and went straight home." (Doc. 9-6 at 5). Baine does not contend that the alleged handprint on the bench belonged to him. He does not even speculate as to the identity of the person who might have left the handprint. Nor does he contend that he was bleeding, or that he even suffered any injuries, as a result of the fight with the "guys" he said he confronted the night Brunson was murdered. There is simply no factual basis for Baine's contention that the State destroyed any exculpatory evidence. Baine has, therefore, failed to make a showing sufficient to raise a federal habeas claim. Consequently, he also cannot establish that counsel's performance was deficient on the grounds that he did not object at trial to the

destruction of this evidence. Baine's related ineffective assistance of counsel claim is, therefore, also deficient of the requisite factual predicate.

The state courts' determination that Baine failed to plead sufficient facts in his Rule 32 petition to support a claim regarding the destruction of exculpatory evidence, and necessarily the related claim of ineffective assistance of counsel for failing to object, has not been shown to be contrary to or an unreasonable application of Supreme Court precedent. Baine is, therefore, entitled to no habeas relief on this claim.

## CERTIFICATE OF APPEALABILITY/*IN FORMA PAUPERIS*

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing 2254 Cases (December 1, 2009). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2). When a habeas petition is dismissed on procedural grounds, such as in the instant case, without reaching the merits of any underlying constitutional claim, "a COA should issue [only] when the prisoner shows ... that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000); Miller-EL v. Cockrell, 537 U.S. 322, 336 (2003)("Under the controlling standard, a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have resolved in

a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' ").

In the instant action, Petitioner has failed to establish that the state court's application of clearly established federal law was objectively unreasonable. *See e.g.* Bell, 535 U.S. at 694. Under the facts of this case, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Petitioner should be allowed to proceed further. Slack, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, the undersigned recommends that the Court conclude that no reasonable jurist could find it debatable whether the Petitioner's petition should be dismissed; thus, he is not entitled to a certificate of appealability.

Additionally, the undersigned here addresses the related issue of whether any appeal of an order adopting this Report and Recommendation and denying habeas relief may be brought *in forma pauperis*. An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed.R.App. P. 24(a)(3)(A); Lee v. Clinton, 209 F.3d 1025, 1026 (7th Cir.2000) (concluding that "good faith" is "an objective concept" and that "not taken in good faith" is "a synonym for frivolous"); DeSantis v. United Techs, Corp., 15 F.Supp.2d 1285, 1288-89 (M.D .Fla.1998) (stating that good faith "must be judged by an objective, not a subjective, standard" and that an appellant "demonstrates good faith when he seeks

appellate review of any issue that is not frivolous"). An appeal filed *in forma pauperis* is frivolous if "it appears that the Plaintiff has little to no chance of success," meaning that the "factual allegations are clearly baseless or that the legal theories are indisputably meritless." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir.1993). For the foregoing reasons, the undersigned recommends that the court find no possible good faith basis for appeal of the denial of the petitioner's habeas claims, and thus that no appeal of such a ruling may be brought *in forma pauperis*.

CONCLUSION

For the reasons set forth above, if is hereby RECOMMENDED that Baine's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**, and that no Certificate of Appealability should issue and that no appeal of this ruling be brought *in forma pauperis*.

**Notice of Right to File Objections**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific. The Rules

further oprovide that "[a] party may respond to another party's objections within 14 days after being served with a copy." FED. R. CIV. P. 72(b).

    **DONE** this <u>20th</u> day of August, 2013.

<u>/s/ Katherine P. Nelson</u>
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**
